IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Brian McDonald Hamilton, | ) C/A No. 2:13-2865-DCN-BHH |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Warden Larry Cartledge; Associate Warden Florence Mauney; Classification Branch Chief Michael Matthews; Case Manager Felicia Ogunsile, | ) ) ) ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff, Brian McDonald Hamilton ("Plaintiff"), is a state prisoner housed in the Perry Correctional Institution ("PCI") of the South Carolina Department of Corrections ("SCDC") in Pelzer, South Carolina. Plaintiff, proceeding pro se and in forma pauperis, brings this civil rights action against Defendants, seeking monetary damages and injunctive relief, pursuant to 42 U.S.C. § 1983,[1] for alleged violations of his Fifth and Fourteenth Amendment rights. Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review such complaints for relief and to submit findings and recommendations to the District Court. After careful review, the undersigned finds that Plaintiff's Complaint is

---

[1] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

subject to summary dismissal, without prejudice and without issuance and service of process, because it fails to state a claim on which relief may be granted by this Court.

### PRO SE AND IN FORMA PAUPERIS REVIEW

Under established local procedure in this judicial district, a careful review has been made of the pro se complaint pursuant to the procedural provisions of 28 U.S.C. § 1915. The review has been conducted in light of the following precedents: Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); and Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). The Complaint herein has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B)(i), (ii), (iii). Hence, under 28 U.S.C. §1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte. Neitzke v. Williams, 490 U.S. 319 (1989).

This Court is required to liberally construe pro se documents, Estelle v. Gamble, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, Hughes v. Rowe, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, a pro se complaint is subject to summary dismissal. The mandated liberal construction afforded pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to "conjure up questions never squarely presented"

to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't. of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## BACKGROUND

Plaintiff alleges that he is "being subjected to double jeopardy for being held in solitary confinement for offenses already discipline[d] for, 5th amendment violation." Complaint, ECF No. 1, p. 3. Plaintiff alleges "Defendants used S.C.D.C. policy/procedure that was not effective during the time of this matter to continuously hold Plaintiff in Disciplinary Detention [which] is a due process violation thereby violating the 14th Amendment of the U.S. Constitution." Complaint, ECF No. 1, p. 9.

Plaintiff alleges that, on May 25, 2012 at PCI, Plaintiff was placed on pre-hearing detention for possession of a weapon and, on June 7, 2013, Plaintiff was convicted of possession of contraband because of a charge reduction and sanctioned to 60 days disciplinary detention/solitary confinement, including 14 days of pre-hearing detention. Plaintiff alleges that his disciplinary detention time ("DD time") for the May 2012 contraband violation ended on July 23, 2012. However, Plaintiff alleges that he was not released from disciplinary detention until April 22, 2013. Plaintiff alleges that, in August 2012, when Plaintiff thought that he had completed his DD time and would be released back into general population, Plaintiff was told that he still had DD time to serve, until June 7, 2015. In September 2012, Plaintiff alleges that he questioned how he could be disciplined twice for the same offense. Plaintiff alleges that he was told that early release from the Special Management Unit ("SMU") does not erase DD time left to serve, which can be reinstated.

Plaintiff alleges that SCDC policy/procedure OP-22.12, SMU, issued December 29, 2009, states, in section 2.1.2, that "[i]n general, disciplinary detention is served day for day, however, wardens may for purposes of bed space management, release inmates to general population early when the inmate has demonstrated good behavior during the term of disciplinary detention."  Complaint, ECF No. 1, p. 6.  Plaintiff alleges that SCDC policy/procedure OP-21.04, Inmate Classification Plan, issued January 1, 2011, section 39.2 quotes the same section of this policy.

Plaintiff alleges that, on September 2, 2012, another SMU policy was issued, section 2.1.2, which stated the same policy that it superseded, but added: "Note: If an inmate is released from disciplinary detention early, but causes additional problems while in general population, he/she can be returned to SMU for the completion of their disciplinary detention time." Id.  Plaintiff alleges that this new policy authorizing an inmate's return to SMU for completion of unserved DD time, which became effective on September 1, 2012, does not apply to Plaintiff, because all of Plaintiff's old DD time occurred before the policy was issued and Plaintiff's DD time ended on July 23, 2012.

Plaintiff alleges that, in November 2012, Plaintiff filed a grievance against Defendant Mauney because she did not reply to Plaintiff's written request, on September 30, 2012, in which Plaintiff argued that his unserved DD time should not have been reinstated.  Plaintiff alleges that, in November 2012, Plaintiff received a response from Defendant Matthews referring Plaintiff to OP-22.12 (September 1, 2012).  Plaintiff alleges that, when he argued that the September 2009 policy, not the September 2012 policy, should apply to Plaintiff's situation, Defendant Matthews responded that Plaintiff was accountable under the current SCDC policy.  See Complaint, ECF No. 1, p. 4 - 8.

4

Plaintiff alleges that he filed three additional grievances, all of which were answered by Defendant Warden Cartledge, who stated that, when Plaintiff was released to the yard with DD time still to serve, the DD time did not go away, and could be reinstated. Plaintiff alleges that he has exhausted his administrative remedies. Plaintiff alleges that "all grievances were denied on Step I phase and Plaintiff continued to the Step 2 phase. Plaintiff alleges that he received a final response to his Step 2 grievance, on Sept. 12, 2013, and "the other two grievances ha[ve] also been exhausted due to the fact that the grievance process has exceeded its time according to S.C.D.C. policy/procedure GA-01.12, 'Inmate Grievance System,' and the Plaintiff was not serve[d] with an extension." Complaint, ECF No. 1, p. 9.

Plaintiff seeks injunctive relief to prevent Defendants from reinstating Plaintiff's prior unserved disciplinary detention time, following Plaintiff's release from SMU upon completion of his most recent disciplinary detention sanction. Plaintiff also seeks "compensatory damages in the amount of $200.00 per day for the 273 days Plaintiff was subjected to double jeopardy and due process violations, against each Defendant," and "punitive damages in the amount of $7,000.00 against each Defendant." Complaint, ECF No. 1, p. 10.

## DISCUSSION

Plaintiff's Complaint fails to establish that Plaintiff is entitled to relief in this Court based on Defendants' alleged violations of Plaintiff's right to due process and right to be free from double jeopardy. Plaintiff alleges that his right to be free from double jeopardy was violated when Defendants reinstated his disciplinary detention time when Plaintiff's remaining disciplinary detention time should have been dismissed. The Double Jeopardy

Clause of the Fifth Amendment provides that "no person shall … be subject for the same offence to be twice put in jeopardy of life or limb …"  See United States v. Ayala, 601 F.3d 256, 2010 WL 1409417 at *5 (4th Cir. Apr. 2010).  However, Plaintiff's attempt to invoke the Double Jeopardy Clause is misguided here, because it is not implicated by internal prison disciplinary actions.  See Brown v. Mauney, No. 8:10-717-CMC-BHH, 2010 WL 1838648 at *5 (D.S.C., April 15, 2010) adopted by, dismissed without prejudice by 2010 WL 1838643 (D.S.C., May 6, 2010); Lewis v. Pettiford, No. 6:06-1061-GRA-WMC, 2007 WL 542735 at **8-9 (D.S.C. Feb. 16, 2007); Anderson v. Padula, No. 0:05-3029-PMD-BM, 2006 WL 1075003 at *4 (D.S.C. April 19, 2006) (noting that the double jeopardy clause does not cover prison disciplinary sanctions).  Plaintiff also appears to claim that Defendants' actions violated the Ex Post Facto Clause, because certain SCDC disciplinary procedure policies were applied to his disciplinary charge even though these policies were adopted after the date of his disciplinary infractions.  "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting Beazell v. Ohio, 269 U.S. 167 (1925)).  However, Plaintiff's ex post facto claim fails here, because a prison disciplinary infraction is not a "crime," and SCDC policy is not a "statute."  See Lindsey v. McKie, No. 9:11-695-MBS, 2012 WL 932017 (D.S.C. Mar. 19, 2012).

      With regard to Plaintiff's due process claim, this Court recognizes that the due process clause protects a prisoner from being arbitrarily punished.  See Wolff v.

6

McDonnell, 418 U.S. 539, 558 (1974) (finding that due process protects individuals against arbitrary action of government). However, Plaintiff's factual allegations fail to establish that Plaintiff's disciplinary detention resulted in the loss of any constitutionally protected liberty interest, such as an inmate's "good time" credits, or the imposition on Plaintiff of any atypical and significant hardship in relation to the ordinary incidents of prison life.[2] Plaintiff's claim that Defendants violated or misapplied SCDC policy by subjecting Plaintiff to excessive disciplinary detention does not state a plausible due process claim. Allegations that prison officials have not followed their own policies or procedures, standing alone, do not amount to a constitutional violation. See Brown v. Braxton, 373 F .3d 501, 505 (4th Cir. 2004); Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.l990); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 at *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio). Therefore, Plaintiff's claim that Defendants failed to comply with the prison's own voluntary policies and/or procedures does not state a due process claim. Pierre v. Ozmint, No. 08-4025, 2009 WL 252090 at *1 (D.S.C. Feb. 2, 2009) (Dismissing complaint without prejudice where plaintiff's allegation "that Defendants somehow failed to comply with prison's voluntary grievance procedure does not state a due process claim.")

---

[2] Under Wolff v. McDonnell, 418 U.S. 539 (1974), minimal due process is required when good time credits are taken away, i.e. (1) 24 hours advance written notice of charges; (2) written statement by fact finder as to evidence relied upon; (3) written statement by fact finder as to reason for disciplinary action taken; (4) opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (5) counsel substitute if inmate is illiterate or case is complex; and (6) impartial hearing tribunal. See O'Bar v. Pinion, 953 F.2d 74 (4th Cir. 1991), Al-Shabazz v. State, 338 S.C. 354, 527 S.E. 2d 742 (2000).

Furthermore, under Sandin v. Conner, 515 U.S. 472, 484 (1995), a prisoner's limited right of due process is required *only* when a prison disciplinary action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," which, in this circuit, has been held *not* to include: disciplinary detention; segregated confinement; or loss of canteen, visitation, and phone privileges.[3]  Assignment to disciplinary or administrative segregation does not by itself implicate Fourteenth Amendment due process rights; therefore, no liberty interest appears to have been implicated in Plaintiff's placement in administrative segregation in PCI's SMU.  See Sandin, 515 U.S. at 483-84; Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356 (4th Cir. 1996) (allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357 (4th Cir. 1995) ("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F.Supp. 409, 412 (E.D.Va.1996) (plaintiff has no protected interest in remaining in or being released into general population); Keeler, 782 F. Supp. at 44 (D.S.C. 1992) ("Segregation is one of the conditions of confinement typically contemplated when a person receives a prison sentence; therefore, it is neither cruel and unusual, nor is it a violation of due process."

---

[3] While Plaintiff does not specifically challenge his loss of commissary and telephone privileges, courts have held that these forms of discipline do not implicate the Due Process Clause of the Fourteenth Amendment.  See United States v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996) (no constitutional right to the use of a phone while in prison); Goodwin v. Schwartz, C/A No. 8: 10-1760-CMC-BHH, 2010 WL 3489092 at *2, adopted by 2010 WL 3489097 (D.S.C., Sept. 1, 2010) (canteen access is not a protected liberty interest); Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (an inmate's commissary restrictions "do not implicate due process concerns"); White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977) ("there is no constitutional right to prison visitation").

(citing Meachum v. Fano, 427 U.S. 215 (1976)); Gregory v McKennon, 430 F. App'x 306 at *4 (5th Cir. June 22, 2011) (Affirming dismissal where plaintiff did not implicate a constitutionally protected liberty interest where he was sentenced to segregation and the loss of various privileges after a disciplinary hearing, but alleged no loss of good time credits); Scott v. Hobbs, No. 12-245, 2013 WL 1662965 at *3 (E.D.Ark. Apr. 1, 2013) (plaintiffs claim of denial of due process in his disciplinary hearing did not state a constitutional claim because no loss of good time credit); adopted by, 2013 WL 1662957 (E.D.Ark. Apr. 17, 2013); Crumbley v. Dawson, No. 09-14, 2011 WL 917412 at '" 6 (E.D.Tex. Feb. 17, 2011 ) (No due process violation where disciplinary hearing did not result in loss of a constitutionally protected liberty interest).

Additionally, it is well settled that the placement of inmates into administrative segregation units or similar units is a valid means of minimizing a "threat to security of the institution, threat to the safety of other residents or jail staff, etc." Jackson v. Bostick, 760 F. Supp. 524,528 (D. Md. 1991); Anderson v. County of Kern, 45 F.3d 1310, 1312 (9th Cir. 1995) (prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security").  Therefore, administrative segregation is not per se cruel and unusual punishment under the Eighth Amendment. See Allgood v. Morris, 724 F.2d 1098, 110 1 (4th Cir. 1984) (segregated protective custody); Ross v. Reed, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation).

## RECOMMENDATION

Accordingly, it is recommended that the Complaint in the above-captioned case be summarily dismissed without prejudice and without issuance and service of process.  See

28 U.S.C. § 1915(e)(2)(B)(ii) (failure to state a claim upon which relief may be granted); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

    Plaintiff's attention is directed to the important notice on the next page.

December 12, 2013                              s/Bruce Howe Hendricks
Charleston, South Carolina             United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The petitioner is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk of Court**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).